**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MONTAUK U.S.A., LLC, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 2:17-cv-04747 |
| | ) |
| v. | ) **SECOND AMENDED** |
| | ) **COMPLAINT** |
| 148 SOUTH EMERSON ASSOCIATES, LLC and | ) |
| MICHAEL MEYER | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff Montauk U.S.A., LLC ("Plaintiff" or "MUSA"), by and through its undersigned

counsel, upon Plaintiff's personal knowledge as to itself and its own acts and upon information

and belief as to all other matters, brings this action against 148 South Emerson Associates, LLC

("Associates") and Michael Meyer ("Meyer") (collectively, "Defendants") and alleges as

follows:

## NATURE OF THE ACTION

1.      Plaintiff seeks a declaratory judgment: (1) that it did not procure any fraud upon

the United States Patent and Trademark Office ("USPTO") when registering the Sloppy Tuna

Marks, as defined herein; (2) of non-infringement of any trademarks in which Defendants claim

an interest; and (3) that any alleged rights asserted by Defendants in the Sloppy Tuna Marks are

invalid and unenforceable.

2.      Additionally, Plaintiff seeks damages and an injunction in connection with

Associates' willful infringement and dilution of Plaintiff's federally registered Sloppy Tuna

Marks.  Defendant Associates has willfully infringed Plaintiffs' federally registered trademarks,

and continues to do so, and Associates' infringement will continue unless enjoined by this Court.

**THE PARTIES**

3.      Plaintiff was organized on August 6, 2010 as a Georgia limited liability company. The sole member and owner of Plaintiff since inception has been, and continues to be, Drew Doscher.  Plaintiff's Manager is Mark Horowitz, and its principal place of business is located in Towaco, New Jersey.

4.      Defendant Associates is a New York limited liability company with its principal place of business at 148 South Emerson Avenue, Montauk, New York.  Associates is equally owned by Meyer and Drew Doscher.

5.      Defendant Meyer is a resident of New York, who resides at 150 East 72nd Street, #4E, New York, New York 10021.

**JURISDICTION AND VENUE**

6.      The Court has original jurisdiction over the subject matter of this trademark action pursuant to 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. § 1121.

7.      This Court has personal jurisdiction over Associates because Associates is a New York limited liability company and its two members are citizens and residents of New York.

8.      This court has personal jurisdiction over Meyer because he is a citizen and resident of New York.

9.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) & (c) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in and Associates does business in this District.

**FACTUAL BACKGROUND**

I.      **MUSA and the Sloppy Tuna Marks**

10.      In 2010, Drew Doscher ("Doscher") devised the concept for a high-quality, affordable chain of bars and restaurants called "The Sloppy Tuna."

2

11.     MUSA was formed on August 6, 2010 to be a holding company for the various Sloppy Tuna Marks to be created and developed to transform the restaurant from concept to reality, with the intention of branding The Sloppy Tuna as a nationwide restaurant and bar. MUSA is organized under Georgia law in order to take advantage of that state's more favorable franchising laws.

12.     Doscher spent nearly two years researching locations for the first bar to operate under the Sloppy Tuna tradename and identified a run-down, dilapidated bar at 148 South Emerson Avenue in Montauk, New York (the "Property") as the perfect site.

13.     In 2011, Doscher recruited three of his partners at The Seaport Group, LLC ("Seaport") – Michael Meagher ("Meagher"), Stephen Smith ("Smith"), and Meyer (collectively, the "Investors") – to invest in the project. Seaport is an organization which handles sales and transfers on the global credit market.

14.     As part of those investment discussions, Doscher repeatedly related his plans for MUSA to own the Sloppy Tuna Marks and license that name to the Montauk business as its first licensee. The Investors disliked the name "Sloppy Tuna," but nevertheless invested in the business because of Doscher's demonstrated business acumen and the Property's proximity to Seaport's Montauk office. They were not, however, interested in investing Doscher's planned "The Sloppy Tuna" chain, and they did not invest in MUSA. Thus, from the outset, the Investors knew and agreed that Doscher owned MUSA, MUSA would register and own the trademarks for the Sloppy Tuna name and logo, and Associates would use those trademarks with MUSA's permission as a licensee.

II.     **Formation and Operation of the Restaurant**

15.     The Investors and Doscher formed 148 South Emerson Partners, LLC ("Partners") to purchase the Property, which Partners acquired in March 2011, and formed Associates for the purpose of operating the restaurant and bar (the "Montauk Restaurant").

16.     While operating agreements were drafted for both Partners and Associates, only Partners had a written, executed operating agreement in which Doscher, Meagher, Smith, and Meyer were equal 25% members.  For Associates, no written agreement was ever executed, as a number of material terms were never agreed upon.

17.     Nevertheless, per their plan, in the spring and summer of 2011, as the Montauk Restaurant was preparing to open, MUSA filed applications with the USPTO, and, in 2012, the USPTO issued registrations the marks set forth below.

18.     The following is a list of the Sloppy Tuna Marks that Plaintiff filed and registered with the USPTO (the "Sloppy Tuna Marks"), the USPTO Certificates of Registration for which are annexed hereto as Exhibit 1:

| Mark | Registration | Registration Date |
|---|---|---|
| SLOPPY LOGO | 4102495 | February 21, 2012 |
| SLOPPY GUY | 4134497 | May 1, 2012 |
| SLOPPY POPPY | 4184289 | July 31, 2012 |
| GET YOUR SLOPPY ON | 4195785 | August 21, 2012 |
| SLOPOLOGY | 4195786 | August 21, 2012 |
| THE SLOPPY TUNA | 422772 | October 9, 2012 |
| MONTUNA | 85372168 | Serial Number |
| 99 PROBLEMS AND A BEACH AINT ONE | 85888296 | Serial Number |

4

| MONTICK | 85957697 | Serial Number |
|---|---|---|
| WHEN IT RAINS WE POUR | 86037062 | Serial Number |

19.      Although they had not invested in MUSA or in the potential national rollout of Sloppy Tuna restaurants, the Investors were nevertheless updated about MUSA's registration of the Marks and aware that Associates would be using the Marks with MUSA's permission (the "Verbal Agreement").  At the conclusion of the third successful summer, MUSA and Associates formalized the Verbal Agreement and entered into a written license agreement with an effective date of October 13, 2013 (the "License Agreement").[1]

20.      For example, on June 1, 2011, all of the Investors received an email notifying them that the application for The Sloppy Tuna mark was being filed "in the name of Montauk U.S.A., LLC," and, consequently, "it cannot be assigned or transferred to another entity" unless certain conditions are met.  Exhibit 2.  And, in May 2012, Meyer was specifically informed of Doscher's ownership of the Marks and of the need for Associates to license them.  Exhibit 3.

21.      The Restaurant opened for business in May 2011 and was an instant success, quickly becoming a well-known destination for visitors to, and residents of, Montauk.

22.      When the Montauk Restaurant began, Doscher and the Investors were all equal owners of Associates.  However, Doscher was the most involved member in terms of actually of

---

[1] On May 9, 2017, ruling on Meyer's motion for partial summary judgment, the Supreme Court of New York, Suffolk County determined the validity of the License Agreement, declaring it is void, invalid, and of no force or effect (the "License Agreement Decision").  [Dkt. No. 92-1.] On June 14, 2017, MUSA and Doscher appealed the License Agreement Decision, which appeal has been fully briefed and remains pending before the Supreme Court of the State of New York Appellate Division, Second Judicial Department. *See Meyer v. Montauk U.S.A., LLC and Doscher*, Supreme Court, Suffolk County Index No. 600830/2015 (NYSCEF Doc. No. 241).

operating the Montauk Restaurant.  The other Investors played a much more limited management

role, each only visiting the Montauk Restaurant a handful of times.

23.      Doscher, in contrast, personally oversaw supervision of the Montauk Restaurant's

day-to-day operation.  Under Doscher's leadership, the Montauk Restaurant was a big success

and quickly became a popular hangout for locals, who appreciated the low-key energy during the

weekdays and beach-themed décor, as well as Montauk vacationers, particularly on the

weekends.

## III.      Meyer Manufactures a Dispute about Ownership of the Sloppy Tuna Marks

24.      In early July 2012, Doscher and Meyer agreed to "buy out" Meagher and Smith's

investments.

25.      Thereafter, a falling out occurred wherein Doscher was terminated from Seaport

in January 2013.  Meyer remained with Seaport.

26.      Specifically, on or about January 11, 2013, Doscher was improperly excluded

from the partnership at Seaport as a direct result of his unwillingness to tolerate Seaport's

violations of applicable securities laws and FINRA regulations, as well as other illegal conduct

by Seaport.  This illegal conduct would, over the course of the next three years, lead to a major

fraud investigation by federal authorities and federal indictment of a Seaport employee, Deborah

Kelley, in a scheme to defraud the New York State Common Retirement Fund.[2]  On May 30,

2017, Ms. Kelley pleaded guilty to conspiring to commit securities and wire fraud for bribing

---

[2] *See generally* Nate Raymond & David Ingram, *N.Y. pension fund manager, brokers charged in pay-to-play scheme*, Reuters (Dec. 21, 2016), http://www.reuters.com/article/us-new-york-corruption-pensionfund-idUSKBN14A1M3.

Fund officials while employed by, among others, Seaport, for which she was paid as much as 40% of the business Seaport received as a result of the bribes.[3]

27.     In June 2013, Doscher commenced a FINRA arbitration proceeding against Seaport, Meyer, and the other Investors alleging systemic illegal activities at Seaport.  The Investors, and Meyer in particular, responded to the FINRA arbitration with a series of litigations relating to the ownership and operation of Partners, Associates, and the Sloppy Tuna Marks. This was part of the Investors' campaign to retaliate, intimidate, and discredit Doscher.

28.      Despite the parties' prior agreement and understanding as to the ownership of the Sloppy Tuna Marks, in October 2014, Meyer commenced a derivative action against Associates and Doscher in New York Supreme Court, Suffolk County Court, Index No. 068379/2014 (the "Receivership Action"), claiming, *inter alia*, that Doscher "intentionally usurped the Marks," diverting them from Associates.

29.     Another of Meyer's tactics was, on November 20, 2014, to cause Associates to bring a cancellation proceeding before the Trademark Trial and Appeal Board in connection with two of the Sloppy Tuna Marks (the "TTAB Proceeding").  Exhibit 4.  In its amended petition in the TTAB Proceeding, Associates alleges, among other things, that MUSA obtained the trademarks by fraud and that "[t]he continued registration of [MUSA's Marks] is likely to cause confusion, mistake, or deception as to the source of [Associates'] goods and services."  Exhibit 5.  The TTAB Proceeding is currently stayed pending resolution of this and other actions involving the Sloppy Tuna Marks.

---

[3] *See* U.S. Department of Justice, *Former Managing Director At New York Broker-Dealer Pleads Guilty In "Pay-To-Play" Bribery Scheme Involving Public Pension Fund* (May 30, 2017), https://www.justice.gov/usao-sdny/pr/former-managing-director-new-york-broker-dealer-pleads-guilty-pay-play-bribery-scheme.

30.     The contentions and allegations contained in the TTAB Complaint are wholly without merit, as Defendants have been on notice since June 1, 2011 that the Sloppy Tuna Marks were being filed on behalf of MUSA and that such marks "could not be assigned or transferred to another entity 1) until proof that the mark is in use has been filed with the Trademark Office or 2) if the other entity buys that portion of Montauk U.S.A.'s business relating to the operation of THE SLOPPY TUNA." *See* Exhibit 2.  No such assignment or transfer of interest was ever effectuated to diminish Plaintiff's ownership of its federally registered Sloppy Tuna Marks. Associates' use of the MUSA marks has always been conditioned on MUSA and Doscher's consent and allowance, as Meyer has long known.  *See* Exhibit 3.

31.     Litigation among Doscher on the one hand, and Meyer, Meagher, and Smith on the other, continued and expanded in 2015.  Meyer, in the Receivership Action, sought the appointment of a receiver for Associates, and over Doscher's objection, Charles Russo (the "Receiver") was appointed.  Notwithstanding that appointment, Doscher remained in control of the operations of Associates throughout the 2015 season – which was once again an extreme success.

IV.     **MUSA Revokes Its Consent, but Associates Continues to Use the Marks**

32.     Although a receiver had been appointed, MUSA continued to allow Associates to use the Sloppy Tuna Marks throughout 2015 because Doscher remained the ultimate responsible person for the operations of Associates.

33.     That changed on March 16, 2016, when the Receiver was granted authority to take "immediate control over the management and . . . and daily operations and financial management" of Associates.  Doscher also was ordered to "surrender control over and access to the daily operations and financial management" of Associates.

34.     With Doscher stripped of control over the Montauk Restaurant and MUSA thus unable to have any control over the quality of goods and services being offered under the Marks, on March 24, 2016, MUSA terminated the License Agreement and withdrew its consent for Associates to use the Marks.  *See* Exhibit 6.

35.     Regardless of whether the License Agreement is void, the unassailable fact is that MUSA is the title owner of the Sloppy Tuna Marks, and MUSA no longer consents to the use by Associates of the Marks.

36.     Despite the fact that MUSA terminated the License Agreement and revoked its consent to Associates' use of the Sloppy Tuna Marks, Associates re-opened a restaurant and bar on the Property in May 2016 called "The Sloppy Tuna," using The Sloppy Tuna Marks, and began holding itself out as the Sloppy Tuna.

37.     Associates and the Receiver continue to use the Sloppy Tuna Marks without authorization and to hold the Montauk Restaurant out as the Sloppy Tuna, including operating under the name THE SLOPPY TUNA; using the infringing SLOPPY TUNA name on restaurant signage, menus, and advertising; and promoting and selling merchandise using the Sloppy Tuna Marks.

38.     Moreover, the manner in which the restaurant has been operated since Doscher was stripped of control has been intended to dilute and destroy the goodwill associated with the Sloppy Tuna Marks that Doscher and MUSA built up over five summers.

39.     The Receiver and his court-appointed management team have instituted policies that have harmed the business and thus the value of the Sloppy Tuna Marks, such as charging excessive covers for entry as well as charging exorbitant prices for "bottle service" and basic bar appetizers.

40.     These policies were never a part of the business prior to the Receiver assuming

control.  Such changes are anathema to the casual, beachy environment that Doscher had

cultivated for the Sloppy Tuna brand over several years and have thus damaged the Sloppy Tuna

brand and the goodwill associated with the Sloppy Tuna Marks.

41.     Indeed, the public's reaction to the Montauk Restaurant has been quick and harsh,

as evidenced by the flurry of negative reviews that followed its re-opening in 2016.  For

example, the Montauk Restaurant's average rating on the Yelp review website for the summer

2016 season was 2 stars.  Customers described the Montauk Restaurant as "horrible," "way

overpriced, . . . poor service," and "uncomfortable," and warned of the fraud risk associated with

the Montauk Restaurant:  "be very careful with your credit card . . . they will charge you 2-3

times for each transaction."

42.     The Restaurant's precipitous decline in quality only accelerated in the 2017

season.  For example, a June 8, 2017 inspection by the Suffolk County Department of Health and

Services (the "Health Department") noted egregious health and sanitary violations.  Simply put,

the Restaurant has been – under the Sloppy Tuna name and Marks – selling food to the public

that is not safe to eat, with the Health Department finding, among other things:

- Unsafe food preparation and storage: The Health Department noted, among other things, improperly cooked and stored chicken, which had to be discarded upon inspection; improper food storage, including mixing raw animal products and fresh vegetables; and no washing of raw fruits and vegetables before they were prepared and served to customers.

- Unhygienic conditions: The Health Department also found that not a single hand-wash sink in the kitchen or any of the bars was stocked with soap and paper towels; that no food service workers observed were washing their hands; and that there were zero sanitizers in the Restaurant dishwasher.

- Widespread contamination: In particular, the Health Department cited contaminated ice bins and ice machines with chipping and peeling paint, dirt, and trash and soiled wiping cloths left on food preparation surfaces.

43.     In addition to the sickening lack of cleanliness, the Restaurant premises have also been allowed to fall into utter disrepair.  In particular, the Health Department noted a neglected leak under the equipment in the second floor bar that had "sodden plywood floor so thoroughly" that water had pooled to about one inch deep and started leaking through to the first floor, causing "large sections of broken and falling sheetrock leaving gaping holes."

44.     The Restaurant has also publically committed other violations of law since 2016, including violations of liquor laws by, among other things, advertising free beer and wine to all customers, illegally warehousing large quantities of alcohol off premises, and allowing an underage employee to drink for free on premises, and of labor laws, including by failing to properly pay overtime to employees.

45.     There presently exists a justiciable controversy regarding Plaintiff's ownership of the Sloppy Tuna Marks, whether its conduct constitutes an infringement of any trademark rights allegedly owned by Associates, and whether Meyer has any legal or equitable interest in the Sloppy Tuna Marks.

46.     Further, despite Defendants' claims to the contrary, MUSA is the rightful owner of the Sloppy Tuna Marks, and thus Associates' unauthorized use of those marks constitutes textbook infringement under the Lanham Act.

**FIRST CLAIM FOR RELIEF**
**Validity of Ownership of the Sloppy Tuna Marks**

47.     Plaintiff hereby realleges and incorporates by reference the allegations of each of the paragraphs of this Complaint as if fully set forth herein.

48.     An actual justiciable controversy exists regarding the rightful ownership of the Sloppy Tuna Marks, as demonstrated by Defendants commencement of the TTAB Petition.

49.     Plaintiff requests an order declaring that it is the lawful owner of the Sloppy Tuna Marks, that Defendants have no legal or equitable interest in the Sloppy Tuna Marks, and that Plaintiff is not infringing, has not infringed, and is not liable for infringing any trademark rights allegedly owned by Defendants.

## SECOND CLAIM FOR RELIEF
### Federal Trademark Infringement under 15 U.S.C. § 1114
### (Against Associates)

50.     Plaintiff hereby realleges and incorporates by reference the allegations of each of the paragraphs of this Complaint as if fully set forth herein.

51.     Associates has engaged in the unauthorized use of the Sloppy Tuna Marks in connection with the advertising and promotion of its goods and services without permission, authority, or consent of MUSA and said use is likely to cause confusion, mistake, and/or to deceive.

52.     Associates' unauthorized use of the Sloppy Tuna Marks in connection with the advertising and promotion of its goods and services has been made willfully and deliberately, notwithstanding MUSA's prior established rights in the Sloppy Tuna Marks and with both actual and constructive notice of MUSA's federal registration rights.

53.     Associates' infringing activities have caused, and unless enjoined by the Court, will continue to cause, irreparable injury and other damage to MUSA's business, reputation, and goodwill in the Sloppy Tuna Marks for which MUSA has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF
### False Designation of Origin and Unfair Competition under 15 U.S.C. § 1125(a)
### (Against Associates)

54.     Plaintiff hereby realleges and incorporates by reference the allegations of each of the paragraphs of this Complaint as if fully set forth herein.

55.     Associates' unauthorized use of the Sloppy Tuna Marks constitutes a false designation of origin, a false or misleading description and representation of fact which is likely to cause confusion and to cause mistake, and to deceive as to the affiliation, connection or association of Associates with MUSA and as to the origin, sponsorship, or approval of the infringing goods and commercial activities of Associates by MUSA.

56.     Associates' unauthorized use of the Sloppy Tuna Marks in connection with the advertising and promotion of its goods and services was done willfully, intentionally, and deliberately with full knowledge and willful disregard of MUSA's well-known, famous, and prior established rights in the Sloppy Tuna Marks.

57.     As a direct and proximate result of Defendant's false designation of origin and unfair competition, MUSA has suffered, and unless enjoined by this Court will continue to suffer, monetary loss and irreparable injury and other damage to MUSA's business, reputation and goodwill in the Sloppy Tuna Marks for which Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment against Defendants as follows:

A.      That the Court enter judgment in favor of Plaintiff and against Defendants on all claims for relief alleged herein;

B.      That the Court enter an Order declaring Plaintiff is the lawful owner of the Sloppy Tuna Marks, and that Plaintiff is not infringing, has not infringed, and is not liable for infringing any trademark rights allegedly owned by Associates;

C.      That the Court enter an Order declaring that Defendants have no legal or equitable interest in the Sloppy Tuna Marks;

D.      That a preliminary and permanent injunction issue pursuant to Section 34 of the Lanham Act (15 U.S.C. §1116) enjoining and restraining Associates and its successors, assigns,

officers, directors, agents, employees and attorneys, and all persons or entities in active concert, participation, or privity with any of them, from using, on or in connection with the manufacture, sale, importation, exportation, purchase, order, offer for sale, distribution, transmission, advertisement, display and promotion of any products or services, the Sloppy Tuna Marks or other marks that are confusingly similar to the Sloppy Tuna Marks;

E.      That Associates be ordered immediately to recall any and all infringing goods and any other packaging, containers, advertising or promotional material or other matter that displays the Sloppy Tuna Marks or other marks that are identical or substantially similar to the Sloppy Tuna Marks;

F.      That Associates be ordered to deliver to Plaintiff for destruction any and all infringing goods as well as any other packaging, containers, advertising, or promotional material or other matter bearing the infringing marks pursuant to 15 U.S.C. § 1118;

G.      That Associates be directed to file with this Court and serve on Plaintiff within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which Associates has complied with the injunction pursuant to 15 U.S.C. § 1116;

H.      That Associates be required to account to Plaintiff for any and all profits derived by Associates and all damages sustained by Plaintiff by virtue of the actions of Associates complained of herein;

I.      That Associates be ordered to pay over to Plaintiffs any and all profits derived by Associates and all damages which Plaintiff has sustained as a consequence of the actions of Associates complained of herein pursuant to 15 U.S.C. § 1117, subject to proof at trial;

J. That the damages resulting from the actions of Associates complained of herein be trebled pursuant to 15 U.S.C. § 1117 and awarded to Plaintiff;

K. That an award of interest, reasonable costs, expenses and attorneys' fees be awarded to Plaintiff pursuant to 15 U.S.C. § 1117;

L. That an award of interest, costs, and attorneys' fees incurred by Plaintiff in prosecuting this action be awarded to Plaintiff; and

M. That Plaintiff be awarded all other relief to which Plaintiff is entitled and such other and further relief as this Court may deem just.

*/s/ Michael J. Bowe*

Dated: June 4, 2018  Michael J. Bowe
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
Phone: (212) 506-1700
Fax: (212) 506-1800
mbowe@kasowitz.com

*Attorneys for Plaintiff Montauk U.S.A., LLC*